# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JEROME ROSS, | ) | CASE NO. 1:10-cv-01185 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| MICHELE MILLER, Warden | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Petitioner, Jerome Ross ("Ross"), challenges the constitutionality of his conviction in the case of *State v. Ross*, Cuyahoga County Court of Common Pleas Case No. CR08-507705.  Ross, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on May 24, 2010.  On September 16, 2010, Warden Michele Miller ("Respondent") filed her Answer/Return of Writ.  (ECF No. 10.)  Ross filed a Traverse on October 22, 2010.  (ECF No. 11.)  For reasons set forth in detail below, it is recommended that Ross's petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts "shall be presumed to be correct."  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Ross's conviction as follows:

[*P1]  Appellant, Jerome Ross, brings this appeal challenging his conviction on

two counts of rape, for which he was only sentenced to five years in prison. Appellant argues that the trial court inappropriately accepted his waiver of trial by jury, that his trial counsel was ineffective, and that his conviction was against the manifest weight of the evidence. After a thorough review of the record, and for the following reasons, we affirm appellant's conviction.

[*P2]  On March 5, 2008, appellant was indicted by a Grand Jury on two counts of rape in violation of R.C. 2907.02(A)(2), two counts of rape in violation of R.C. 2907.02(A)(1)(c), and one count of kidnapping in violation of 2905.01(A)(2). A bench trial commenced on September 22, 2008, which resulted in the trial court finding appellant guilty of two counts of rape in violation of R.C. 2907.02(A)(1)(c). On October 14, 2008, the court sentenced appellant to five years in prison for each count, to be served concurrently.

[*P3]  Appellant's conviction stems from an incident that took place several years prior to trial, in the summer of 2002, when appellant was approximately 32 years of age.  S.H. ("the victim"), n1 testified that during that summer, when she was 15, she was at home in A.V.'s one-bedroom apartment babysitting A.V.'s daughter.  A.V. was the victim's appointed guardian at the time.  The victim further testified that on that day, appellant knocked on their door, and she let him into the apartment.  Appellant had a bottle of Apple Pucker, and she and appellant began drinking together.  The victim testified that she and appellant would often drink together at an apartment upstairs rented by a mutual friend.  The victim became extremely intoxicated to the point where she was "falling down drunk."

[*P4]  The victim testified that upon going into the bedroom to answer a telephone call, she passed out on the bed. When she awoke, appellant was performing oral sex on her. She testified that she screamed and tried to resist, but appellant pinned her arms above her head and she again passed out. She testified that upon waking the second time, she found herself on the floor of the bedroom next to the bed with appellant having vaginal intercourse with her. She again screamed and tried to fight off appellant unsuccessfully. The victim testified that appellant threw a 20-dollar bill at her, told her to take her boyfriend to the movies, then he left the apartment.

[*P5]  A.V., the victim's guardian, testified that upon arriving home that night, she found the door locked with the security chain, and she was unable to get into the apartment.  After pounding on the door for several minutes, the victim finally removed the chain so A.V. could enter.  A.V. further testified that the victim was wearing only a T-shirt and panties and that her pants were in A.V.'s bedroom.  A.V. also testified that the house smelled strongly of alcohol.  The victim was unable to answer questions due to her intoxication at that time.  A.V. testified that the next day, she and the victim had a "tussle" about what had happened the prior evening.  A.V. found a condom wrapper in her bedroom.  The victim testified that

-2-

she remembered a condom box like that had been distributed at "the free clinic."

[*P6]  According to the testimony of both the victim and A.V., the next day, A.V., her boyfriend, her daughter, and the victim went to appellant's apartment and asked him what had occurred the previous day.  Their testimony was consistent in regard to appellant denying that he "forced" the victim to have sex with him or that he was even in the apartment.  A.V. testified that the victim did not tell her appellant raped her until a year later, while the victim testified that she told A.V. the day after the incident that appellant had raped her.

[*P7]  A.V. reported the incident to children's services, but not in a way that would lead them to believe the victim had been raped, only that the victim was being unruly by drinking and having sex in A.V.'s apartment.  Nothing further was done until a year later, when A.V. was trying to rid herself of custody of the victim.  In an interview with a Cuyahoga County Department of Child and Family Services case worker, A.V. testified she was told that she must report the rape to the police, that she could not ignore such an accusation.  A.V. testified that she and the victim went to the Euclid Police Department, and both made statements. The case did not result in an arrest at that time.

[*P8]  In 2007, the victim was attending college and taking a sociology class that dealt with rape.  She decided to contact the Euclid Police Department to see if anything had been done on her case.  She contacted Detective Kucinski, and in November 2007, Detective Kucinski reviewed the victim's prior statement and asked her to give another statement.  Detective Kucinski reopened the investigation, which led to appellant's arrest and indictment.

*State v. Ross*, 2009 Ohio App. LEXIS 4528, 2009-Ohio-5366 at ¶¶1-8 (Ohio Ct. App., Oct. 8,

2009) (footnotes omitted).

## II.  Procedural History

### A.    Conviction

On March 5, 2008, a Cuyahoga County Grand Jury charged Ross with four counts of rape

in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(1)(c) and/or (A)(2), and one count

of kidnapping in violation of O.R.C. § 2905.01(A)(2) and/or (3) and/or (4), together with sexual

motivation specification. (ECF No. 10-2, Exh. 1.)  On September 22, 2008, after a bench trial,

Ross was found guilty of two counts of rape.  On October 14, 2008, the trial court sentenced

Ross to a term of five years incarceration on each conviction.  (ECF No. 10-2, Exh. 7.)  The

sentences were to be served concurrently.  *Id*.

**B.    Direct Appeal**

On October 22, 2008, Ross, through counsel, filed a Notice of Appeal with the Court of

Appeals for the Eighth Appellate District ("state appellate court").  (ECF No. 10-2, Exh. 8.)

Ross raised the following assignments of error:

> 1.    Defendant's waiver of a trial by jury was not knowingly and intelligently
>        made.
>
> 2.    Defendant was deprived a fair trial due to ineffective assistance of counsel.
>
> 3.    The Court's decision was against the manifest weight of the evidence.

(ECF No. 10-2, Exh. 9.)

On October 8, 2009, the state appellate court affirmed Ross's conviction.  (ECF No. 10-2,

Exh. 11.)

On November 19, 2009, Ross, *pro se*, filed a Notice of Appeal with the Supreme Court of

Ohio.  (ECF No. 10-2, Exh. 12.)  Ross raised the following propositions of law:

> I.    Defendant's waiver of a trial by jury was not knowingly and intelligently
>       made, depriving him of his constitutional right.
>
> II.   Defendant was deprived a fair trial due to ineffective assistance of counsel.
>
> III.  The decision was against the manifest weight of the evidence.

(ECF No. 10-2, Exh. 13.)

On February 10, 2010, the appeal was dismissed as not involving any substantial

constitutional question.  (ECF No. 10-2, Exh. 14.)

**C.    Federal Habeas Petition**

On May 24, 2010, Ross filed a Petition for Writ of Habeas Corpus and asserted the

following grounds for relief:

> GROUND ONE: Defendant's waiver of trial by jury was not knowingly, and
> intelligently made, depriving him of his constitutional right to a public trial
> guaranteed by the U.S.C. IV Amendment.
>
> GROUND TWO: Defendant was deprived of a fair trial due to ineffective
> assistance of counsel.
>
> GROUND THREE: The Decision was against the manifest weight and
> sufficiency of the evidence.

(ECF No. 1.)

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

State prisoners must exhaust their state remedies prior to raising claims in federal habeas

corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the

highest court in the state in which the petitioner was convicted has been given a full and fair

opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th

Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered

moot:  "If no remedy exists, and the substance of a claim has not been presented to the state

courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and

prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17

F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the

-5-

petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice. *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id*. First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court. *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate grounds for precluding relief, the claim is procedurally defaulted.[1] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999).  If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991).  This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts.  AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28.  Where state court remedies are no longer available to a petitioner because he failed to use them within the required

---

[1]  In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted.  785 F.2d at 135.  Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice."  *Id*. at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

-6-

time period, procedural default and not exhaustion bars federal court review.  *Id.*  In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal.  *Id.*  Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted.  *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim.  *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000).  Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely as an issue arising under state law."  *Koontz v. Glossa*, 731 F.2d 365, 368 (6th Cir. 1984).  A petitioner can take four actions in his brief which are significant to the determination as to whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon federal cases employing constitutional analysis; (2) reliance upon state cases employing federal constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts well within the mainstream of constitutional law."  *Newton v. Million*, 349 F.3d 873, 877 (6th Cir. 2003).

A petitioner's procedural default, however, may be excused upon a showing of "cause" for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at 138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).  Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with

-7-

constitutional error." *Id.*  Where there is strong evidence of a petitioner's guilt and the evidence supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6th Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6th Cir. 1994).  Prejudice does not occur unless petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003) (*citing Strickler v. Greene*, 527 U.S. 263, 289 (1999)).

Finally, a petitioner's procedural default may also be excused where a petitioner is actually innocent in order to prevent a "manifest injustice."  *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991).  Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial."  *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*;  See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D. Ohio 2007).

## C.  Analysis

Respondent asserts that Ross's claim that his conviction was based on insufficient evidence, raised in ground three of the petition, is procedurally defaulted.  (ECF No. 10 at 10-11.)  It is undisputed that Ross raised the argument that his conviction was against the manifest weight of the evidence before both the state appellate court and the Ohio Supreme Court.  He did not, however, specifically raise the claim that his conviction was not supported by sufficient evidence.  In *Nash v. Eberlin*, 258 Fed. Appx. 761, 764-765 (6th Cir. 2007), the Sixth Circuit found that a petitioner "did not procedurally default on his sufficiency of the evidence claim by

not presenting it to the Ohio state courts" despite the fact that the petitioner therein "did not literally argue that there was insufficient evidence to support his conviction."  The *Nash* court explained that "the sufficiency of the evidence issue was adequately passed upon by the Ohio courts because the determination by the Ohio Court of Appeals that the conviction was supported by the manifest weight of the evidence necessarily implies a finding that there was sufficient evidence."  *Id.*

This Court declines to address the procedural default issue, and will instead proceed to address the merits of Ross's claims.  The United States Supreme Court has observed that federal courts are not required to address a procedural default issue before deciding against a petitioner on the merits.  *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).  The Sixth Circuit has also approved this rule where the procedural default question is complicated and unnecessary to the court's determination of the case.  *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003); *Jackson v. Anderson*, 141 F. Supp.2d 811, 826-27 (N.D. Ohio 2001).

Respondent also asserts that a component of ground two – Ross's claim that trial counsel was ineffective for failing to call a witness on his behalf – is also procedurally defaulted.  (ECF No. 10 at 10-11.)  On direct appeal, Ross argued that trial counsel was ineffective for the following reasons: (1) he failed to advise Ross concerning his waiver of the right to a jury trial; (2) he failed to participate in an *in camera* inspection of statements by prosecution witnesses; (3) he failed to cross-examine witnesses regarding inconsistencies; and, (4) he failed to present a closing argument.  (ECF No. 10-2, Exh. 9.)  Before the Ohio Supreme Court, Ross made the same arguments as related to his ineffective assistance of trial counsel claim.  Therefore, Respondent's argument that Ross has procedurally defaulted his ineffective assistance of trial

-9-

counsel claim, as it relates to counsel's decision not to call witnesses, is well taken.  The state

courts never had an opportunity to address this distinct claim, and Ross would be barred from

raising it now.  Therefore, this claim is procedurally defaulted.

### IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996

("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The

relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody
> pursuant to the judgment of a State court shall not be granted with respect to any
> claim that was adjudicated on the merits in State court proceedings unless the
> adjudication of the claim–
>
> > (1) resulted in a decision that was contrary to, or involved an unreasonable
> > application of, clearly established Federal law, as determined by the
> > Supreme Court of the United States; or
> >
> > (2) resulted in a decision that was based on an unreasonable determination of
> > the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States

Supreme Court.  *See Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d

1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not

mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent"

also qualify as "clearly established law."  *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v.

Withrow*, 288 F.3d 846, 852 (6th Cir. 2002)).

A state court's decision is contrary to clearly established federal law "if the state court

arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if

-10-

the state court decides a case differently than [the Supreme] Court has on a set of materially

indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's

decision involves an unreasonable application of clearly established federal law "if the state

court identifies the correct governing legal principle from [the Supreme] Court's decisions but

unreasonably applies that principle to the facts of the prisoner's case." *Id.*  However, a federal

district court may not find a state court's decision unreasonable "simply because that court

concludes in its independent judgment that the relevant state court decision applied clearly

established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court

must determine whether the state court's decision constituted an objectively unreasonable

application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts

defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006)

(*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

**A. Ground One: Waiver of Right To Jury Trial**

Ross asserts that his waiver of his right to a trial by jury was not knowingly and

intelligently made, thereby depriving him of his constitutional right to a public trial as

guaranteed by the Sixth Amendment to the United States' Constitution.[2]  (ECF No. 2.)  Ross

argues that he is "not smart" with respect to the judicial system and, therefore, his waiver could

not have been made intelligently.  (ECF No. 11 at 8.)  He avers that both the court and his

counsel should have insisted that he discuss the issue with counsel prior to agreeing to waive his

right to a jury trial.  *Id.* at 8-9.  Ross bears the "burden of demonstrating that he did not expressly

and intelligently consent to waive a jury trial and that the [state court's] judgment to the contrary

---

[2]  Ross misidentifies these rights as stemming from the Fourth Amendment.

-11-

[was] either an unreasonable application of clearly established Supreme Court precedent or contrary to that precedent, or resulted from an unreasonable interpretation of the evidence presented to the state courts." *Filiaggi v. Bagley*, 445 F.3d 851, 855 (6th Cir. 2006).

The Sixth Amendment guarantees a defendant's right to a jury trial, and that right is extended to criminal proceedings in state courts. *See, e.g., Duncan v. Louisiana*, 391 U.S. 145, 149 (1968) (holding that the Sixth Amendment right to a jury trial applies to the States through the Fourteenth Amendment); *Brady v. United States*, 397 U.S. 742, 748 (1970). The Sixth Circuit has explained that "defendants may waive their right to trial by jury only if four conditions are met. First, the waiver must be in writing. Second, the government attorney must consent to the waiver. Third, the trial court must approve the waiver. Fourth, the defendant's waiver must be voluntary, knowing and intelligent." *United States v. Martin*, 704 F.2d 267, 271 (6th Cir. 1983); *accord United States v. Sammons*, 918 F.2d 592, 596 (6th Cir. 1990); *Cooey v. Anderson*, 988 F. Supp. 1066 (N.D. Ohio 1997) "[W]hether or not there is an intelligent, competent, self-protecting waiver of jury trial by an accused must depend upon the unique circumstances of each case." *Adams v. United States ex rel. McCann*, 317 U.S. 269, 278 (1942).

There appears to be no dispute that the waiver herein was in writing, consented to by the prosecuting attorney, and approved by the court. In addition, based on the colloquy below, it is also clear that Ross's waiver was voluntary. Thus, the Court will focus on whether Ross's waiver was knowing and intelligent. The trial court engaged in the following exchange with Ross when he indicated that he wanted to waive his right to a trial by jury:

> THE COURT:  Mr. Ross, do you understand that under the Constitution and laws of both the United States and the State of Ohio that you have the right to have your case tried to a jury of 12 and then no verdict would be rendered by a jury unless all 12 members agree?  Do you understand that?

-12-

THE DEFENDANT:  Yes.

THE COURT:  Do you understand that by waiving that, you're allowing one person to make the decision on your case?

THE DEFENDANT: Yes.

THE COURT: And have any threats or promises been made to you to induce this waiver?

THE DEFENDANT:  No, ma'am.

THE COURT:  Are you under the influence of any alcohol, drugs or medication that would affect your decision in this regard?

THE DEFENDANT:  No, ma'am.

THE COURT:  Good.  Have you discussed the benefits and consequences of waiving your jury trial with your lawyer?

THE DEFENDANT:  No.

THE COURT:  Who have you discussed it with?

THE DEFENDANT: Myself.

THE COURT:  You haven't asked Mr. Kellon what would be the best thing for you to do?

THE DEFENDANT:  We haven't talked about it.

THE COURT:  Why not?

THE DEFENDANT:  Never came up.

THE COURT: Did you discuss it with Jason Haller, your other attorney?

THE DEFENDANT: No.

THE COURT: Did you discuss it with people in the jail?

THE DEFENDANT: No.

THE COURT:  Can I ask why do you want to waive the jury trial?

-13-

THE DEFENDANT:  You know the law better than 12 other people from the street.

THE COURT:  That may be true, I might know the law better, but you're going to let me decide all the facts and who I believe and who I don't believe—

THE DEFENDANT:  Right.

THE COURT:  —as opposed to 12 people from the street?

THE DEFENDANT:  Right.

THE COURT:  You would rather have me decide who to believe and who not to believe?

THE DEFENDANT: Yes, ma'am.

* * *

THE COURT:  Are you sure you don't want to discuss this with your attorney first?

THE DEFENDANT:  I am sure.

* * *

THE COURT:  Do you consider yourself smart when it comes to the justice system?

THE DEFENDANT:  No, I don't.

THE COURT: Well, then I guess I have to ask you again, why would you make this big a decision without counsel from your attorney?

THE DEFENDANT:  Because I feel comfortable with the fact that you can decide hogwash from the truth.

THE COURT:  You know, sir, I don't have any crystal ball up here.  Do you also know that I can only discuss the case, so to speak, with myself?

THE DEFENDANT:  Right.

THE COURT:  I can't go and get anybody else's opinion on whether I thought he or she was lying or telling the truth?  Do you understand that?

-14-

THE DEFENDANT: Yes.

THE COURT: With 12 people, they can all have opinions as to whether he or she was lying? They can discuss that with each other?

THE DEFENDANT: I understand.

THE COURT: One might be able to persuade some this way or that way?

THE DEFENDANT: Yes.

THE COURT: Do you know that I am known as a very tough judge?

THE DEFENDANT: Yes.

THE COURT: You know that?

THE DEFENDANT: I also know that you can tell the truth from a lie.

THE COURT: Sometimes I can. I have been wrong. I have been wrong. I have given probation to the wrong people sometimes. I am not always right. Yes, I do like to think I can tell that, but I can't always.

* * *

I just hope you understand that I am a very conservative, Catholic, tough judge. I'll be fair, but I just want you to know some people would say you should go with the jury because I am a tough judge.

THE DEFENDANT: I have heard that. The way I look at it, I got a choice between one person I don't know but the system trusts or 12 people that just came in off the street that don't know too much about nothing and are just going to base their opinion and go home after that.

THE COURT: I can't argue with your logic, with your reasoning. You have looked at it in a very logical independent sense even though I and others may differ with you.

(ECF No. 10-3, Tr. at 3-9.)

The state appellate court addressed Ross's assignment of error and engaged in the following

analysis on this issue:

-15-

[*P13]  Appellant's first assignment of error alleges that the waiver of trial by jury was improperly accepted by the trial court because the waiver was not knowingly and intelligently made. Appellant cites to the fact that trial counsel did not explain to him the ramifications of his decision to waive this right.

[*P14]  In order for the trial court to accept a waiver of trial by jury, the waiver must be voluntary, knowing, and intelligently made.  *State v. Ruppert* (1978), 54 Ohio St.2d 263, 375 N.E.2d 1250. R.C. 2945.05 states that "the defendant may waive a trial by jury and be tried by the court without a jury. Such waiver by a defendant, shall be in writing, signed by the defendant, and filed in said cause and made a part of the record thereof."  This section goes on to require that "[s]uch waiver of trial by jury must be made in open court after the defendant has been arraigned and has had opportunity to consult with counsel."

[*P15]  Crim.R. 23 also requires that any waiver of a defendant's right to a trial by jury be "knowingly, intelligently, and voluntarily [made] in writing * * *.  Such waiver may also be made during trial with the approval of the court and the consent of the prosecuting attorney."  These provisions combine to delineate what is required in order for a court to accept a valid waiver of trial by jury.  If these rules are complied with and "if the record shows a jury waiver, the conviction will not be set aside except on a plain showing that the defendant's waiver was not freely and intelligently made."  *State v. Fitzpatrick*, 102 Ohio St.3d 321, 2004 Ohio 3167, 810 N.E.2d 927, at P37, citing *Adams v. U.S. ex rel. McCann* (1942), 317 U.S. 269, 281, 63 S. Ct. 236, 87 L. Ed. 268.

[*P16]  It appears from the record that appellant did not discuss his decision to waive trial by jury with his counsel and instead relied on discussions with others. Appellant stated that he believed the judge knew the law better than "12 other people from the street."  The trial court discussed with appellant at length the reasons why appellant believed he would be better served by a bench trial, informed him of the unanimity requirement of a jury trial, warned him of her reputation as a tough judge, gave appellant ample opportunity to discuss his decision with counsel, and all but told him not to waive the jury.

[*P17]  "There is no requirement in Ohio for the trial court to interrogate a defendant in order to determine whether he or she is fully apprised of the right to a jury trial.  The Criminal Rules and the Revised Code are satisfied by a written waiver, signed by the defendant, filed with the court, and made in open court, after arraignment and opportunity to consult with counsel."  *State v. Jells* (1990), 53 Ohio St.3d 22, 25-26, 559 N.E.2d 464.

[*P18]  The trial judge went beyond what is required in Ohio for a valid waiver; therefore, appellant's first assignment of error is overruled.

*Ross*, 2009-Ohio-5366 at ¶¶13-18.

Although the state appellate court's opinion is grounded primarily in state law, Ohio's requirements appear to be firmly rooted in federal law, and may, arguably, even exceed the minimum requirements set forth by federal precedent to effect a valid waiver of the right to a jury trial.  The Sixth Circuit has indicated that "a defendant ignorant of the nature of the jury trial right cannot intelligently weigh the value of the safeguard."  *Sowell v. Bradshaw*, 372 F.3d 821, 832 (6th Cir. 2004) (*quoting Martin*, 705 F.2d at 273.)  The *Sowell* court explained that a defendant "should have both the mental ability and some knowledge of the jury trial right before he is allowed to waive it" though a technical knowledge of the jury trial right is not required.  *Id*. Instead, a defendant can make a knowing and intelligent waiver "if he was aware that a jury is composed of 12 members of the community, he may participate in the selection of the jurors, the verdict of the jury must be unanimous, and that a judge alone will decide guilt or innocence should he waive his jury trial right."  *Id*.  Though there is no Supreme Court precedent requiring a colloquy prior to a valid waiver of a defendant's right to a jury trial, *Filiaggi*, 445 F.3d at 856, the above quoted portion of the transcript indicates that the trial judge engaged in an extensive colloquy, informing Ross of the basic parameters of his right to a trial by jury and the fact that a waiver would result in the trial judge deciding all questions of fact and law.

Furthermore, to the extent that Ross argues that he was not aware of the ramifications of his waiver as it relates to his appellate rights, such an argument is meritless.  The Sixth Circuit has noted that it is unaware of any Supreme Court precedent "that conditions the validity of a jury waiver upon a defendant's understanding of the appellate process."  *Filiaggi*, 445 F.3d at 856.

The state appellate court's decision was neither contrary to, nor involved an unreasonable

-17-

application of, clearly established federal law as determined by the Supreme Court.  In addition, the state appellate court's decision was based on a reasonable determination of the facts in light of the evidence presented.  Therefore, it is recommended that Ross's first ground for relief be dismissed.

**B.  Ground Two: Ineffective Assistance of Trial Counsel**

Ross asserts that his trial counsel was ineffective for the following reasons: (1) he failed to advise Ross concerning his waiver of the right to a jury trial; (2) he failed to participate in an *in camera* inspection of statements by prosecution witnesses; (3) he failed to cross-examine witnesses regarding inconsistencies; and, (4) he failed to present a closing argument.[3]  (ECF No. 2.)

To establish ineffective assistance of counsel, a petitioner must demonstrate that his counsel's conduct was so below acceptable standards of representation that counsel was not functioning as "counsel" guaranteed by the Sixth Amendment to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *United States v. Bavers*, 787 F.2d 1022 (6th Cir. 1985).  A petitioner also must demonstrate that a trial counsel's performance prejudiced the petitioner's defense to such an extent that it rendered the proceeding unfair.  *Id*.  To establish prejudice, the "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  *Id*. at 694.  In other words, a counsel's deficient performance must have "caused the defendant to lose what he otherwise would probably have won" and it must have been "so manifestly ineffective that

---

[3]  As discussed above, a fifth claim – that trial counsel was ineffective for failing to call witnesses on Ross's behalf – was never raised in state court and is procedurally defaulted.

-18-

defeat was snatched from the hands of probable victory." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  Mere disagreements by a defendant with tactics or strategies employed by counsel are not enough to support a claim of ineffective assistance of counsel and there is a presumption that the challenged conduct of a petitioner's counsel was a matter of strategy.  *Id*. at 689; *see also United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

Ross asserts that trial counsel failed to advise him concerning his waiver of the right to a jury trial.  The state appellate court found this argument to be without merit, because Ross was afforded the opportunity to consult his attorney about this matter and declined to do so.  *Ross*, 2009-Ohio-5366 at ¶24.  This is borne out by the exchange with the trial judge who specifically inquired whether Ross wanted to consult with counsel before making a final decision.  (Tr. 3-9.) Ross unequivocally indicated that he did not.  *Id*.  The state appellate court further explained that Ross "made clear his reasons for choosing a bench trial," that the reasons offered "satisfied the trial court as well as [Ross's] trial counsel," who "was not ineffective in counseling appellant about his decision to forego a jury trial because appellant did not want his advice." *Ross*, 2009-Ohio-5366 at ¶24.

Ross further asserts that his attorney failed to participate in an *in camera* inspection of statements by prosecution witnesses after they testified.  (ECF No. 2.)  In addition Ross claims that counsel failed to cross-examine the prosecution's witnesses and draw out inconsistencies in their testimony.  *Id*.  The state appellate court explained that "[Ross] specifically alleges that trial

-19-

counsel should have requested *in camera* reviews of the written statements of Detective Kucinski and the victim." *Ross*, 2009-Ohio-5366 at ¶25.  That court found that "[t]he record further indicates that trial counsel did review the prior statements before cross-examining the victim." *Id*. at ¶26.  Respondent argues that Ross's counsel was clearly familiar with the statements as indicated by his cross-examination of the victim wherein he asked her about inconsistencies between her statement and trial testimony.  (ECF No. 10 at 25-27.)  The state appellate court further found that Ross's counsel did cross-examine the witnesses and attempted to identify inconsistencies in the evidence.  *Ross*, 2009-Ohio-5366 at ¶26 (noting that "trial counsel questioned the victim at length about inconsistencies in her testimony and prior statements.")  The state appellate court's findings, as well as Respondent's contention that counsel performed a cross-examination and exhibited a familiarity with prior statements of the victim, are supported by the record.  (Tr. 72-77.)  Trial counsel also cross-examined Detective Kucinski and the victim's foster mother, although he did not attempt to identify inconsistencies in the foster mother's testimony.  (Tr. 25, 28, 105-114.)  However, as her testimony was largely beneficial to Ross's case, the decision not to undermine her credibility is thoroughly reasonable.

Finally, Ross argues that trial counsel's representation was constitutionally deficient because he prejudicially waived giving a closing argument.[4]  (ECF No. 2.)  The state appellate court found as follows:

---

[4]  It bears noting that trial counsel only waived closing arguments after the prosecution indicated that it was not going to offer a closing argument.

[*P27]  Appellant also argues that trial counsel was prejudicially deficient by waiving closing arguments. The Ohio Supreme Court has found that "debatable trial tactics do not establish ineffective assistance of counsel." *State v. Conway*, 109 Ohio St.3d 412, 2006 Ohio 2815, 848 N.E.2d 810, P101, citing *State v. Hoffner*, 102 Ohio St.3d 358, 2004 Ohio 3430, 811 N.E.2d 48, P45; *State v. Campbell*, 90 Ohio St.3d 320, 339, 2000 Ohio 183, 738 N.E.2d 1178.  Here, the decision to waive closing arguments was a valid trial tactic.  Appellant  argues that had trial counsel highlighted inconsistences in the victim's testimony, the trial court would not have found her testimony credible. Even if trial counsel had highlighted these inconsistencies in closing arguments, appellant has presented no evidence that this would have made the outcome of the trial any different.  The waiver of closing arguments does not automatically constitute ineffective assistance of counsel.  *State v. Burke*, 73 Ohio St.3d 399, 404-405, 1995 Ohio 290, 653 N.E.2d 242.

[*P28]  The judge found the victim's testimony credible even with the inconsistencies drawn out on cross-examination by trial counsel.  A few more inconsistencies, which did not bear directly on the prosecution's case, do not convince this court that appellant was prejudiced by the alleged errors he argues were made by trial counsel.  Trial counsel's decision to forego closing argument is a valid trial tactic when the prosecution has the opportunity to highlight, in graphic detail, appellant's actions constituting the elements of rape that occurred that summer day in 2002.  Rather than let the prosecutor make the last statement in the case, trial counsel made a tactical decision that would allow appellant's testimony to be the last thing the trial court would hear.  This is a valid tactical decision.

*Ross*, 2009-Ohio-5366 at ¶¶27-28.

Although in this latter analysis the state appellate court cites solely state law, the law cited concerning trial tactics and strategies of counsel is consistent with clearly established federal law on the issue.  *Strickland*, 466 U.S. at 689; *Perry*, 908 F.2d at 59.  Furthermore, even if the decision to refrain from giving a closing argument is construed as a deficient performance rather than a mere tactical decision, Ross has failed to demonstrate a reasonable probability that, but for counsel's failure to give a closing argument, the result of the proceeding would have been different.

This Court cannot find any fault with the state appellate court's findings as it concerns

-21-

Ross's ineffective assistance of counsel claim, as it clearly identified the correct governing law, applied the law in a manner that was neither contrary to nor an unreasonable application of the law, and constituted a reasonable determination of the facts in light of the evidence presented.

**C.  Ground Three: Sufficiency of the Evidence and Manifest Weight of the Evidence**

Ross asserts that his conviction was both against the manifest weight of the evidence and not supported by sufficient evidence.  (ECF No. 2.)  Manifest weight claims are not cognizable on federal habeas review.  *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin*, 2006 WL 2090093 at *6 (S.D. Ohio 2006).  As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"  *Hess v. Eberlin*, , 2006 WL 2090093 at *7 (S.D. Ohio 2006) *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983).  Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Ross's conviction was against the manifest weight of the evidence.  *Id*.

Nonetheless, given that *pro se* habeas petitions are entitled to a liberal construction, that Ross raised a manifest weight argument on direct appeal and that the state appellate court addressed Ross's manifest weight argument, the Court will consider a sufficiency argument on its merits.  The Due Process Clause of the Fourteenth Amendment requires that a criminal

conviction be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged.  *In re Winship*, 397 U.S. 358, 363-64 (1970).  The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).  In making such a determination, a district court may not substitute its own determination of guilt or innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *Id.*; *see also Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give deference to factual determinations made in state court and "[a]ny conflicting inferences arising from the record . . . should be resolved in favor of the prosecution." *Heinish v. Tate*, 9 F.3d 1548, 1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70; *Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the nature of constitutional sufficiency review.)

Ross's actual argument as to why he believes his conviction was not supported by sufficient evidence is unclear.  In his petition, he merely takes issue with the trial judge's credibility finding and notes that the evidence lacked consistency.[5]  (ECF No. 2.)

With respect to Ross's manifest weight argument, the state appellate court found as follows:

> [*P30]  Appellant was convicted on the testimony of the victim. The trial court found the victim's testimony credible and the testimony of appellant not so.  The

---

[5]  Ross's Traverse does not clarify his sufficiency of the evidence argument.  (ECF No. 11.)  His brief before the state appellate court challenges the trial court's finding that the victim was credible while her foster mother was deemed not credible.  (ECF No. 10-2, Exh. 9.)

trier of fact is in the best position to determine the credibility of witnesses. *DeHass*, supra.

[*P31]  Appellant was convicted of two counts of rape in violation of R.C. 2907.02(A)(1)(c).  This section makes it unlawful for one to engage in sexual conduct when "[t]he other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age, and the offender knows or has reasonable cause to believe that the other person's ability to resist or consent is substantially impaired because of a mental or physical condition or because of advanced age."  The victim's testimony established that it was apparent she was intoxicated to the point where she was "falling down drunk"; that appellant supplied the alcohol that caused her inebriation; that she "passed out"; and that appellant engaged in sexual conduct with her while she was in and out of consciousness.

[*P32]  The victim's testimony met all the elements of the crimes for which appellant was convicted, and other testimony corroborated her testimony. Specifically, A.V. testified that the victim was extremely intoxicated on that day, and both testified that the remains of a condom package were found in the bedroom.  Although the testimony of the victim also established the elements of rape in violation of R.C. 2907.02(A)(2), the trial court did not find appellant guilty of these two counts because there was no corroborating testimony to establish forcible sexual conduct, a required element of this crime.

[*P33]  The trial court did not "lose its way" in convicting appellant of two counts of rape. Evidence was adduced at trial that two separate sexual acts took place where appellant, who provided alcohol to the minor child, knew or had reason to know that the victim's ability to resist or consent was substantially impaired due to her intoxication.  Appellant's third assignment of error is overruled.

*Ross*, 2009-Ohio-5366 at ¶¶30-33.

The victim's testimony alone was sufficient to uphold Ross's conviction for rape, as physical evidence of rape is not an essential element of rape under Ohio law.  *See, e.g.*, *State v. Johnson*, 858 N.E.2d 1144, 112 Ohio St. 3d 210, 217 (Ohio 2006) (rejecting a sufficiency of the evidence claim based on a lack of physical evidence of rape); *see also State v. Love*, 550 N.E.2d 951, 49 Ohio App. 3d 88, 91 (Ohio Ct. App. 1988) ("no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction.")  Furthermore,

credibility assessments are beyond the purview of this Court upon habeas review.  *See, e.g.,* *Schlup v. Delo*, 513 U.S. 298, 330 (1995) ("[T]he assessment of the credibility of witnesses is generally beyond the scope of review" when addressing a sufficiency of the evidence claim.); *United States v. Hilliard*, 11 F.3d 618, 620 (6th Cir. 1993) ("In addressing sufficiency of the evidence questions, this Court has long recognized that we do not weigh the evidence, consider the credibility of witnesses or substitute our judgment for that of the jury."); *Johnson v. Mitchell*, 585 F.3d 923, 931 (6th Cir. 2009) (finding that, when conducting a sufficiency of the evidence review, "we do not reweigh the evidence, re-evaluate the credibility of witnesses, or substitute our judgment for that of the jury.")

While the state appellate court's decision was not an unreasonable determination of the facts in light of the evidence presented, this Court has also conducted its own independent review of the trial transcript.  The victim clearly testified that: (1) she was fourteen years old at the time of the incident (Tr. 29-30); (2) she was "falling down drunk" from alcohol that Ross had provided her (Tr. 40-45); (3) Ross performed oral sex on her against her will and he pinned her hands down when she attempted to resist (Tr 46-49.); and, (4) Ross performed sexual intercourse with her against her will.  (Tr. 49-50.)  It is not a habeas court's function to pass on the reliability or credibility of the victim or any other witness.  Instead, this Court must view the evidence in the light most favorable to the prosecution.  As such, the jury could reasonably have found the victim's testimony credible, and her testimony alone is sufficient to uphold Ross's conviction for rape.

Therefore, it is recommended that ground three of the petition be dismissed.

-25-

## V.  Conclusion

For the foregoing reasons, it is recommended that Ross's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: May 10, 2011


### OBJECTIONS

**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**